## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## EASTERN DIVISION

GWENDOLYN TOLLER, on Behalf of                                    PLAINTIFF
Herself and All Other Similarly Situated Persons

v.                              No. 2:07CV00062 JLH

SAGAMORE INSURANCE COMPANY                                    DEFENDANT

### OPINION AND ORDER

Gwendolyn Toller commenced this action in the Circuit Court of Phillips County, Arkansas, on behalf of herself and other similarly situated persons, against Sagamore Insurance Company, alleging breach of contract and seeking declaratory and injunctive relief as well as an accounting. Toller alleges that defendant has consistently issued automobile liability insurance policies without providing no-fault coverages or obtaining waivers of such coverage as required by Arkansas law. Sagamore removed the action to this Court.  Toller has moved to remand the action to the circuit court, arguing that the amount in controversy requirements of 28 U.S.C. § 1332(a) and (d) have not been met, so this Court lacks subject matter jurisdiction.

### I.

Sagamore Insurance Company issued an automobile liability insurance policy to Gwendolyn Toller in December 2006.  Toller alleges that the Arkansas Code requires every automobile insurance policy issued in Arkansas to provide uninsured motorist coverage, underinsured motorist coverage, medical benefits, and income disability benefits or accidental death benefits ("no-fault coverages") unless the insured waives the coverage in writing.  *See* ARK. CODE ANN. §§ 23-89-202-03, 209 (2004); 23-89-403-04 (2004 & Supp. 2007).  Toller alleges that at the time of her application for insurance, she was not made aware of the availability of such no-fault coverages as required by Arkansas law and was likewise not given the opportunity to reject such coverage.

On February 27, 2007, Toller was injured in a car accident. She alleges that she incurred medical expenses in excess of $48,000, for which she made a claim under her policy with Sagamore. She alleges that Sagamore wrongfully denied her claim. Toller also alleges that she has claims for underinsured motorist benefits and on disability benefits, as provided by the Arkansas statutes cited above. These are the only statements in the complaint regarding the damages that Toller herself suffered; nowhere in the complaint does she specify the amount of damages that she seeks; and nowhere in the complaint does she limit her damages to less than $75,000.

Toller seeks, on behalf of herself and others, attorneys' fees and any applicable penalties for Sagamore's breach of contract; declaratory and injunctive relief that would find Sagamore's conduct in violation of Arkansas's law and enjoin them from such conduct in the future; and an accounting of all persons who were deprived of uninsured or underinsured coverage including notification that those in an accident while covered by such insurance may have a claim that went unpaid. While Toller does not specify the amount sought by herself or the class, she states that the amount in controversy will not exceed the sum or value of $4,999,999, and she specifically waives any amount of compensatory damages, restitution, interest, costs, and attorneys' fees above that amount.

Sagamore removed this action under 28 U.S.C. § 1441. Sagamore argues that the Court has diversity jurisdiction on two grounds. First, Sagamore argues that the parties are of diverse citizenship and that the amount in controversy exceeds $75,000, so this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a). Second, Sagamore argues that this case is a class action, that the class has more than 100 members, that the amount in controversy exceeds $5,000,000, and that minimal diversity exists, so this Court has jurisdiction pursuant to the Class Action Fairness Act, codified at 28 U.S.C. § 1332(d).

Toller has moved to remand.  She argues that Sagamore has not met its burden to demonstrate that the amount in controversy meets the minimum amount under either 28 U.S.C. § 1332(a) or (d).

## II.

It is undisputed that Toller and most, if not all, of the members of class that she seeks to represent are citizens of Arkansas who have purchased insurance from Sagamore and that Sagamore is an Indiana corporation with its principal place of business in Indiana. "Minimum diversity," requiring only one plaintiff and one defendant to be diverse, is met.  *See* 28 U.S.C. § 1332(d)(2)(A) (Supp. V 2005).  The complaint asserts that there are "hundreds, if not thousands" of Arkansans insured by Sagamore who are members of the class; thus, the class number requirement of 100 under 28 U.S.C. § 1332(d)(5) has also been met.  Toller does not allege specific amounts of damages as to her own claims (*e.g.*, disability benefits, underinsured insurance claim, medical expenses), nor does she allege a specific amount in controversy for the class other than her attempt to limit the amount in controversy to less than $4,999,999.[1]  The parties disagree as to whether the amount in controversy on Toller's individual claim exceeds the minimum jurisdictional amount of $75,000 under 28 U.S.C. § 1332(a), and likewise they disagree as to whether the amount in controversy for the protective class exceeds the jurisdiction threshold of $5,000,000 provided in 28 U.S.C. § 1332(d).

In reviewing a motion to remand, the Court must resolve all doubts in favor of remand to state court.  *In re Business Men's Assurance Co. of America*, 992 F.2d 181, 183 (8th Cir. 1993).  The

---

[1] For a discussion of whether it is appropriate for a plaintiff serving as named representative in a class action to assert a voluntary limitation of damages, see Stephen J. Shapiro, *Applying the Jurisdictional Provisions of the Class Action Fairness Act of 2005: In Search of a Sensible Judicial Approach*, 59 BAYLOR L. REV. 77, 116-21 (2007).

amount in controversy is determined by examining "the situation at the time of removal." The United States Supreme Court has held that:

> where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, [28 U.S.C.] § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction.

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549, 125 S. Ct. 2611, 2615, 162 L. Ed. 502 (2005) (allowing aggregation of plaintiffs' claims when one plaintiff meets the amount in controversy requirement for diversity). Thus, if Sagamore can show that the amount in controversy on Toller's claim is at least $75,000, then the action is removable. *See id.*; *see also* 28 U.S.C. § 1332(a). Alternatively, the action is removable if Sagamore can show that the amount in controversy for the class, when aggregated together, exceeds $5,000,000. 28 U.S.C. § 1332(d).

## A.     BURDEN OF PROOF

The party seeking to invoke federal jurisdiction has the burden of proving that the requisite amount in controversy has been met. *Hatridge v. Aetna Cas. & Surety Co.*, 415 F.2d 809, 814 (8th Cir. 1969). When the complaint "alleges no specific amount of damages or an amount under the jurisdictional minimum," the removing party must prove by a preponderance of the evidence that the amount in controversy requirement is met. *In re Minnesota Mut. Life Ins. Co. Sales Practices Litigation*, 346 F.3d 830, 834 (8th Cir. 2003); *see also James Neff Kramper Family v. IBP, Inc.*, 393 F.3d 828, 831 (8th Cir. 2005); *Trimble v. Asarco, Inc.*, 232 F.3d 946, 959 (8th Cir.2000); *Haynes v. Louisville Ladder Group, LLC*, 341 F. Supp. 2d 1064, 1066-67 (E.D. Ark. 2004); *Moriconi v. AT&T Wireless PCS, LLC*, 280 F. Supp.2d 867, 878 (E.D. Ark. 2003); *Gilmer v. Walt Disney Co.*, 915 F. Supp. 1001, 1007 (W.D. Ark. 1996). "'The complaint will be dismissed if it appears to a

legal certainty that the value of the claim is actually less than the required amount.'" *In re Minnesota Mutual*, 346 F.3d at 834 (quoting *Trimble*, 232 F.3d at 959).

Some courts have held that the Class Action Fairness Act (28 U.S.C. § 1332(d)) shifts the burden from the defendant to the party seeking remand. *See Harvey v. Blockbuster, Inc.*, 384 F. Supp.2d 749, 752 (D. N.J. 2005); *Berry v. Am. Express Pub., Corp.*, 381 F. Supp.2d 118, 1122-23 (C.D. Cal. 2005). Courts that have so held point to legislative history. *See Ongstad v. Piper Jaffray & Co.*, 407 F. Supp.2d 1085, 1088 (D. N.D. 2006) (citing the relevant cases and explaining their rationale). The Supreme Court and the Eighth Circuit have not yet spoken on whether the burden of proof should be different under the Class Action Fairness Act than it is under traditional diversity. *Id.* However, the District Court of North Dakota determined not "to break from the well-established rule of law that the removing party bears the burden of establishing federal subject-matter jurisdiction" because "[t]here is simply nothing in [the Class Action Fairness Act] that contemplates such a change." *Id.* at 1090. This Court agrees with the District Court of North Dakota.

## B.     AMOUNT IN CONTROVERSY

### 1.     Toller's Individual Claim

The Arkansas Code requires that an insured be offered underinsured motorist coverage at least in the amount of $25,000. *See* ARK. CODE ANN. § 23-89-209(a)(4); ARK. CODE ANN. § 27-19-605 (2004). The disability benefits available under the statute amount to $7,280.[2] *See* ARK. CODE ANN. § 23-89-202. Up to $5,000 in no-fault medical expenses may also be available under the statute. *See* ARK. CODE ANN. § 23-89-202. Toller seeks in her complaint the 12% penalty and reasonable attorneys' fees available pursuant to Ark. Code Ann. § 23-89-208. "Statutory attorney

---

[2] For a non-income earner, the maximum allowed would be $3,640.

fees do count toward the jurisdictional minimum for diversity jurisdiction." *Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 766 (8th Cir. 2001). Likewise, the 12% penalty may be included in calculating whether amount in controversy exists. *Peacock & Peacock, Inc. v. Stuyvesant Ins. Co.*, 332 F.2d 499, 502 (8th Cir. 1964). On Toller's calculation, the penalty would come to $4,474, while reasonable attorneys' fees would come to $13,904 (one-third of $41,754). Altogether, on Toller's calculation, the amount in controversy for her individual claim is $55,658.

Toller's assessment of the amount in controversy does not include the $48,000 in medical expenses mentioned in paragraph 21 of her complaint. If that sum is included as part of the amount in controversy, then the amount in controversy exceeds the $75,000 threshold for diversity jurisdiction provided in 28 U.S.C. § 1332(a); if that sum is not included as part of the amount in controversy, the threshold for diversity jurisdiction under § 1332(a) is not met.

Sagamore insists that the amount in controversy meets the minimum amount of $75,000 required under 28 U.S.C. § 1332(a). First, Sagamore notes the amount for medical expenses mentioned by Toller in paragraph 21 of her complaint, $48,000. Sagamore also notes $71,091.87 in medical expenses mentioned in a letter dated April 16, 2007, from one of Toller's lawyers to Sagamore. That letter states:

Pursuant to Ark. Code Ann. § 23-89-209(c), enclosed please find the following:

(a) A complete list of the Medicals and Specials now totaling $71,091.87 with attached bills and reports;

(b) A written authorization signed by Gwendolyn Tollor [sic] allowing Sagamore Insurance Company, through you, to obtain medical reports and financial information from Gwendolyn Tollor's [sic] medical care providers and employer; and

(c) Letters dated April 10 & April 13, 2007, from State Farm, which confirm in writing, that State Farm Insurance Company's insurance carrier has only $50,000 liability limits and further that the insurance carrier has tentatively offered said limits of liability insurance.

> Pursuant to Ark. Code Ann. §23-89-209(d)(1), you have 30 days from receipt of this notice to make payment to Gwendolyn Tollor [sic], through my office, in the amount of $50,000, the tentative settlement. If you do not make such payment, Gwendolyn Tollor [sic] will accept the settlement. Ms. Tollor [sic] will then pursue her rights under the underinsured motorist coverage of her policy with your company. This coverage is force placed under Arkansas Law as Ms. Tollor [sic] did [not] sign a written rejection of underinsured coverage with Sagamore and did not reject this coverage in any fashion.

ARK. CODE ANN. § 23-89-209(d) provides that an underinsured motorist's insurer may make payment to its insured equal to a proposed settlement with the insurer of the other vehicle and thereby preserve its subrogation rights, but if it fails to do so within 30 days, it forfeits certain rights, including the right to refuse payment of the underinsured motorist coverage benefit by reason of the settlement. Toller says that she "is not seeking a $50,000 payment on the underlying settlement from Sagamore and has no legal right to pay the underlying settlement. The underlying settlement has been paid by the at fault party and is not an issue."

Sagamore correctly argues that Toller cannot defeat federal jurisdiction by reducing her demand after removal.

> It is the situation at the time of removal which is determinative. A subsequent charge, such as the plaintiff's post-removal voluntary reduction of his claim to less than the jurisdictional amount, does not defeat federal jurisdiction acquired through removal.

*Hatridge*, 415 F.2d at 814 (citation omitted). Even if "the plaintiff after removal by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292, 58 S. Ct. 586, 592, 82 L. Ed. 2d 845 (1938).

Here, the complaint seems to have alleged claims exceeding $75,000 because paragraph 21 of the complaint specifically mentions the $48,000 in medical expenses the claim for which Sagamore wrongfully denied. However, as mentioned in the April 16, 2007, letter from Toller's

lawyer to Sagamore, after the complaint was filed but before the case was removed, State Farm Mutual Automobile Insurance Company tendered to Toller its policy limits of $50,000.

The complaint was filed on April 3, 2007. The letter from State Farm to Toller's lawyer tendering the policy limits of $50,000 is dated April 13, 2007. Toller notified Sagamore of the settlement with State Farm by letter dated April 16, 2007. Sagamore filed its notice of removal on May 14, 2007. Toller says that there is no legal basis for her to recover the $50,000 from Sagamore after she has already recovered that amount from State Farm, and Sagamore cites no such basis.

In the absence of controlling or persuasive authority on point, this Court will hold that the amount in controversy does not encompass medical expenses included in the $50,000 payment of which was tendered by State Farm after the complaint was filed but before removal. The Court so holds because the amount actually in controversy on Toller's individual claim at the time of removal did not include the amount paid by State Farm; this is not a case in which the plaintiff has contrived to defeat diversity jurisdiction by voluntarily reducing her claim; and because in reviewing a motion for remand the Court must resolve all doubts in favor of remand. However, the Court cannot tell from the record what amount, if any, of Toller's medical expenses were at issue at the time of removal. The $50,000 payment by State Farm exceeds the $48,000 in medical expenses alleged in the complaint, so on those numbers it would appear that no medical expenses should be included in the amount in controversy; but the prayer for relief includes a request for relief for all class members for medical and hospital benefits. If Toller's medical expenses exceed $50,000, her complaint is drafted in such a manner that she could make a claim for the amount in excess of $50,000. Nothing in the complaint, the correspondence in the documents filed in the record, or the statutes would preclude Toller from asserting a claim against Sagamore for medical expenses in the amount by which those expenses exceed the sum paid by State Farm. Neither party has provided a copy of the

insurance policy, so the Court cannot say as a matter of law whether or not Toller has a claim for medical expenses exceeding the amount paid by State Farm in addition to the underinsured motorist benefit that she seeks.  As the Court will explain hereinafter, the parties will be given an opportunity to submit "summary-judgment-type evidence" on this issue.

      **2.**      **The Claims of the Class**

Toller argues that she has voluntarily limited the total claim of the class to an amount less than $5,000,000, and that the law recognizes such a limit on the damages claimed as sufficient to defeat diversity jurisdiction.  *See Red Cab Co.*, 303 U.S. at 294, 58 S. Ct. at 593 ("If [the plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove."); *see also Gilmer*, 915 F. Supp. at 1005 (if the complaint pleads damages in a specific amount less than the minimum for diversity jurisdiction, the defendant must prove to a legal certainty that the amount exceeds the jurisdictional threshold to avoid remand).

Here, however, Toller seeks not only damages but also equitable relief, and she does so not only on her own behalf but also on behalf of a class.  The effect of the equitable relief that she seeks would be to require Sagamore to provide the statutory mandated no-fault coverages to all of its insureds in Arkansas who have not rejected those coverages in writing.  As mentioned above, those no-fault coverages include $25,000 in underinsured motorist coverage, $5,000 in no-fault medical coverage, $7,200 in income disability coverage for an income earner or $3,640 for a non-income earner, and $5,000 for accidental death coverage.  These coverages total $42,800 per policy.  The parties apparently agree for purposes of this motion that Sagamore issued 37,556 automobile liability policies in Arkansas from 2002 to 2007 and that, of those policies, 35,663 lacked no-fault coverage. If Sagamore were to pay $42,800 to each of the 35,663 persons who lacked no-fault coverage, the

amount paid would exceed a billion and one-half dollars. It is thus mathematically possible that if the equitable relief that Toller seeks is granted the result could be that Sagamore would pay no-fault benefits to class members in amounts that would exceed $5,000,000. Toller's statement in her complaint that the amount in controversy will not exceed $4,999,999, and her statement that she waives any amount in controversy in excess of that amount, would have no affect on the amount that Sagamore could ultimately be called upon to pay if Toller obtains the equitable relief that she seeks. The cases that she cites are not on point because they are cases in which a plaintiff sued for damages in an amount less than the threshold for diversity jurisdiction. A plaintiff who sues for damages less than the threshold for diversity jurisdiction can be bound to that limit, but there is no practical way to require Sagamore to provide no-fault coverages totaling $42,800 per policy for 35,663 policies and then say that, after Sagamore has paid $4,999,999 in no-fault benefits, no other policyholders will be entitled to make claims for those benefits. Therefore, the statement in Toller's complaint that the amount in controversy will not exceed $4,999,999 and that she waives any claim exceeding that amount is of no consequence to the determination of the amount in controversy.

When an action seeks declaratory or injunctive relief, the amount in controversy is measured by the value of the object of the litigation. *James Neff Kramper*, 393 F.3d at 833. Sagamore asserts that the "value of the object of the litigation" for the class should be measured by the face value of the insurance policies. If that is so, the amount in controversy for the class will exceed the $5,000,000 required amount in controversy under 28 U.S.C. § 1332(d). In calculating the amount in controversy under the Class Action Fairness Act, Sagamore says that even if the class includes only 200 members, when 200 is multiplied by the face value of the no-fault coverages, which total $42,800 per policy, the amount in controversy comes to $8.456 million.

However, the cases upon which Sagamore relies are life insurance cases in which the face value of the policy would inevitably be paid if the policy holder continues the policy. *See In re Minnesota Mutual*, 346 F.3d at 835 ("[I]f they would receive the equitable relief that they have requested, they would be due the face value of their policies upon their death, 'an event bound to happen.'"(citation omitted)); *Guardian Life Ins. Co. of America v. Muniz*, 101 F.3d 93, 94 (11th Cir. 1996) ("The policies in suit are contracts by which the insured agrees to pay the premiums and the insurer agrees to pay the full face value of the policies on the death of the insured, an event bound to happen."); *Mass. Cas. Ins. Co. v. Harmon*, 88 F.3d 415, 416 (6th Cir. 1996) (holding that since the full face value of the policy, including future benefits, was at issue, the amount in controversy was met); *In re Prudential Ins. Co. of Am. Sales Practices Litigation*, 962 F. Supp. 450, 503 (D. N.J. 1997) (relying solely on cases dealing with life insurance policies to apply "face value of policy" calculation).

The automobile insurance policies that Sagamore issued to Toller and the putative class are not like the life insurance policies in the cases listed above. Unlike death, an automobile accident is not an "event bound to happen," and even when claims are made under such policies, the policy limits are not necessarily paid by the insurance company. A Virginia district court observes this type of distinction:

> In the usual case of this kind, where the insured seeks to recover to the fullest extent of coverage, the court can determine the amount in controversy by reference to the face of the policy. This case is made difficult, however, by the fact that Brown seeks a judgment of only $50,000 plus costs in her state court action. Where the insured does not seek to recover the maximum under the policy, the court cannot rely exclusively on the policy limit as the measure of the amount in controversy.

11

*Allstate Ins. Co. v. Brown*, 736 F. Supp. 705, 707 (W.D. Va. 1990) (citations omitted).  Similarly, in this case, the face value of the no-fault coverages at issue is not necessarily the amount actually in controversy.

Sagamore has also calculated the amount in controversy in an alternative manner.  Sagamore says that the difference between the filed rates for policies with and without no-fault coverage is $241.74.  Sagamore multiplies that figure by 35,663 to arrive at an amount in controversy on the no-fault coverages of slightly more than $8,621,000.  Sagamore refers the Court to documents on file at the Arkansas Insurance Department and asks the Court to take judicial notice of them, but Sagamore has provided no copies of those documents nor any other evidence to support its assertion that the difference in the rates for policies with and without no-fault coverage is $241.74.

Toller estimates the amount in controversy as $1,858,602 based on the average number of policies likely to result in claims and the average amounts of those claims.  Toller's estimates are based on paragraph 21 of Sagamore's notice of removal, but that paragraph calculates an estimate of claims for medical benefits and does not include accident benefits, death benefits, or loss of income benefits.  Toller has provided no evidence of the total amount Sagamore is likely to pay in claims if she succeeds in obtaining the equitable relief that she seeks for the class.

## CONCLUSION

Without evidence, the Court is unable to make findings as to the value of the injunctive relief that Toller seeks.  Neither party has supported that party's argument as to the amount in controversy with evidence.  In determining the amount in controversy, the Court may "require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995).  The parties must submit such

evidence, along with a supplemental brief arguing the significance of such evidence, by 5:00 p.m. on October 17, 2007.  Reply briefs will be due by 5:00 p.m. on October 24.

The Court will hold the motion to remand in abeyance pending receipt of "summary-judgment-type evidence" on the issue of the amount in controversy at the time of removal.

IT IS SO ORDERED this 26th day of September, 2007.


J. LEON HOLMES
UNITED STATES DISTRICT JUDGE