IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

GWENDOLYN TOLLER, on Behalf of                                                    PLAINTIFF
Herself and All Other Similarly Situated Persons

v.                                    No. 2:07CV00062 JLH

SAGAMORE INSURANCE COMPANY                                                         DEFENDANT

**OPINION AND ORDER**

Gwendolyn Toller commenced this action in the Circuit Court of Phillips County, Arkansas, on behalf of herself and other similarly situated persons, against Sagamore Insurance Company. Sagamore removed the action to this Court, and Toller has moved to remand the action to circuit court, arguing that this Court is without subject matter jurisdiction because the amount in controversy requirements of 28 U.S.C. § 1332(a) and (d) have not been met. The parties agree that the diversity of citizenship requirements of 28 U.S.C. § 1332(a) and (d) have been met. The Court requested and has reviewed supplemental briefing on each party's amount in controversy calculations. For the following reasons, this court denies Toller's motion to remand.

**I.**

In her complaint, Toller did not allege specific amounts of damages as to her own claims (*e.g.*, disability benefits, underinsured insurance claim, medical expenses), nor did she allege a specific amount in controversy for the class other than her attempt to limit the amount in controversy to less than $4,999,999. The parties disagree as to whether the amount in controversy on Toller's individual claim exceeds the minimum jurisdictional amount of $75,000 under 28 U.S.C. § 1332(a), and likewise they disagree as to whether the amount in controversy for the protective class exceeds the jurisdictional threshold of $5,000,000 provided in 28 U.S.C. § 1332(d). In their initial briefings

to the court, the parties presented arguments on the burden of proof and how the amount in controversy should be calculated for both Toller's individual claim and the claims of the class. However, the Court did not have sufficient evidence from the parties' filings to determine the amount in controversy and requested that the parties submit "summary-judgment-type evidence" and supplemental briefing on the issue of amount in controversy at the time of removal. Both parties have now provided additional evidence and arguments supporting their calculations of the amount in controversy.

## II.

The amount in controversy is determined by examining "the situation at the time of removal." *Hatridge v. Aetna Cas. & Sur. Co.*, 415 F.2d 809, 814 (8th Cir. 1969). The United States Supreme Court has held that:

> where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, [28 U.S.C.] § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction.

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549, 125 S. Ct. 2611, 2615, 162 L. Ed. 502 (2005) (allowing aggregation of plaintiffs' claims when one plaintiff meets the amount in controversy requirement for diversity). If Sagamore shows that the amount in controversy on Toller's claim is at least $75,000, then the action is removable. *See id.*; *see also* 28 U.S.C. § 1332(a). Alternatively, the action is removable if Sagamore shows that the amount in controversy for the claims of the class, when aggregated together, exceed $5,000,000. 28 U.S.C. § 1332(d).

In reviewing a motion to remand, the Court must resolve all doubts in favor of remand to

state court. *In re Business Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993). The party seeking to invoke federal jurisdiction has the burden of proving that the requisite amount in controversy has been met. *Hatridge*, 415 F.2d at 814. When the complaint "alleges no specific amount of damages or an amount under the jurisdictional minimum," the removing party must prove by a preponderance of the evidence that the amount in controversy requirement is met. *In re Minn. Mut. Life Ins. Co. Sales Practices Litig.*, 346 F.3d 830, 834 (8th Cir. 2003); *see also James Neff Kramper Family v. IBP, Inc.*, 393 F.3d 828, 831 (8th Cir. 2005); *Trimble v. Asarco, Inc.*, 232 F.3d 946, 959 (8th Cir. 2000); *Haynes v. Louisville Ladder Group, LLC*, 341 F. Supp. 2d 1064, 1066-67 (E.D. Ark. 2004); *Moriconi v. AT&T Wireless PCS, LLC*, 280 F. Supp. 2d 867, 878 (E.D. Ark. 2003); *Gilmer v. Walt Disney Co.*, 915 F. Supp. 1001, 1007 (W.D. Ark. 1996). "'The complaint will be dismissed if it appears to a legal certainty that the value of the claim is actually less than the required amount.'" *In re Minn. Mut.*, 346 F.3d at 834 (quoting *Trimble*, 232 F.3d at 959).

### A.    TOLLER'S INDIVIDUAL CLAIM

Sagamore issued an automobile liability insurance policy to Toller in December 2006. Toller alleges that the Arkansas Code requires every automobile insurance policy issued in Arkansas to provide uninsured motorist coverage, underinsured motorist coverage, medical benefits, and income disability benefits or accidental death benefits ("no-fault coverages") unless the insured waives the coverage in writing. *See* ARK. CODE ANN. §§ 23-89-202-03, 209 (2004); ARK. CODE ANN. 23-89-403-04 (2004 & Supp. 2007). Toller alleges that at the time of her application for insurance she was not made aware of the availability of such coverages as required by Arkansas law and was likewise not given the opportunity to reject such coverage.

Arkansas law requires three types of automobile liability coverage: uninsured motorist, no-fault liability, and underinsured motorist coverage. Robert A. Burk, Note, Shelter Mutual Insurance Co. v. Irvin–*The Arkansas Supreme Court's Retroactive Application of the Amended Uninsured Motorist Act*, 46 ARK. L. REV. 737, 737 (1993). Each of the three types serves a different purpose and operates differently. *Id.*; *see also Clampit v. State Farm Mut. Auto. Ins.*, 309 Ark. 107, 109-10, 828 S.W.2d 593, 595 (1992). When a party seeks such underinsured motorist coverage, the minimum liability coverage required is $25,000. ARK. CODE ANN. §§ 23-89-209, 27-19-605. If an insurer has not given an insured the opportunity to reject such coverage, a court may imply coverage by operation of law up to $25,000. *Ross v. United Servs. Auto. Ass'n*, 320 Ark. 604, 606-08, 899 S.W.2d 53, 54-55 (1995).

On February 27, 2007, Toller was injured in a car accident. In the complaint she filed in the Circuit Court of Phillips County on April 2, 2007, Toller alleges that she incurred medical expenses in excess of $48,000, for which she made a claim under her policy with Sagamore. She alleges that Sagamore wrongfully denied her claim. These are the only statements in the complaint regarding the damages that Toller herself suffered; nowhere in the complaint does she specify the amount of damages that she seeks; and nowhere in the complaint does she limit her damages to less than $75,000.

On April 16, 2007, Toller's attorney sent a letter to Sagamore detailing a pending settlement with State Farm Insurance "[p]ursuant to Ark. Code Ann. § 23-89-209(c)." The letter included a list of "[m]edicals & [s]pecials now totaling $71,091.87" and the fact that the settlement was for the liability limits of the at-fault party's State Farm insurance policy, $50,000. While Sagamore has characterized this letter as evidence of the amount that Toller is seeking in damages, the letter is

actually a disclosure Toller was required to make under Arkansas insurance law. *See* ARK. CODE ANN. § 23-89-209; *see also State Auto. Ins. Co. v. Lawrence*, 358 F.3d 982, 985-87 (8th Cir. 2004) ("[I]f an insured seeks [uninsured motorist] coverage, he or she must either actually recover the liability limits *or* provide notice of a tentative settlement and allow the [underinsured motorist] carrier reasonable time (thirty days) to respond to protect its interests.").

Sagamore removed this action to this Court on May 14, 2007. At that time, Toller would have been seeking a claim for the amount that was not covered by her settlement with State Farm, $21,091.87, because that is the extent to which she remained underinsured, although the statute would allow recovery up to $25,000. *See* ARK. CODE ANN. § 23-89-209; *Shelter Mutual Ins. Co. v. Irvin*, 309 Ark. 331, 333-36, 831 S.W.2d 135, 137-38 (1992). Additionally, she is permitted to seek benefits under the no-fault coverage Sagamore is required to provide under section 23-89-202 of the Arkansas code. The no-fault coverage includes up to $5,000 in medical expenses and up to $7,280 in disability benefits (assuming she is employed full time). Arkansas law also allows for an insured to seek a 12% penalty and attorneys' fees when benefits have not been paid, and that amount should be calculated along with Toller's total damages. ARK. CODE ANN. § 23-89-208. Attorneys' fees and the 12% penalty count toward the jurisdictional minimum for diversity jurisdiction. *Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 766 (8th Cir. 2001); *Peacock & Peacock, Inc. v. Stuyvesant Ins. Co.*, 332 F.2d 499, 502 (8th Cir. 1964). The maximum amount Toller could seek adds up to $41,754 before including the attorneys' fees. To reach the minimum amount for diversity jurisdiction, the attorneys' fees would need to meet or exceed $33,246.

Toller asserts that a reasonable attorney's fee would be one-third of the award, or $13,904, which would bring her total claim to a maximum of $55,658, which is less than the minimum

amount for diversity jurisdiction. Sagamore argues that Toller's calculation is not sufficient and instead applies the two-step lodestar method which takes into consideration: 1) the number of hours counsel would reasonably devote to the case; and 2) a reasonable hourly rate for such an attorney. *See State Farm Mut. Auto. Ins. Co. v. Brown*, 48 Ark. App. 136, 145, 892 S.W.2d 519, 524 (1995). The Arkansas Court of Appeals observed that "there is no fixed formula to be used and the award of an attorney's fee is a matter for the sound discretion of the trial court . . . ." *Id.* The Arkansas Supreme Court has identified factors that are relevant in determining reasonable fees:

> (1) the experience and ability of the attorney; (2) the time and labor required to perform the service properly; (3) the amount in controversy and the result obtained in the case; (4) the novelty and difficulty of the issues involved; (5) the fee customarily charged for similar services in the local area; (6) whether the fee is fixed or contingent; (7) the time limitations imposed upon the client in the circumstances; and (8) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the attorney.

*Phelps v. U.S. Credit Life Ins. Co.*, 340 Ark. 439, 442, 10 S.W.3d 854, 856 (2000) (citing *Parker v. S. Farm Bureau Cas. Ins. Co.,* 326 Ark. 1073, 935 S.W.2d 556 (1996)). While the experience of the attorney and the time required by representing the client are important, so are the amount in controversy and the result obtained in the case. It seems unlikely that a court would award more than $33,000 on a claim of $41,000, and unless a court were to do so, the amount in controversy on Toller's individual claim would not reach $75,000. Therefore, diversity jurisdiction does not exist based on Toller's individual claim.

**B.    THE CLAIMS OF THE CLASS**

Toller argues that the amount in controversy on the claims of the class should be calculated by estimating the actual claims under the uninsured motorist, underinsured motorist, medical benefits, accidental death, and income disability coverages that Sagamore would be obligated to

provide to the members of the class if the class is certified and if the class obtains that injunctive relief sought. Sagamore provided information stating the number of policies in Arkansas from April 2002 through May 2007, the number of policies nationwide during that period which have maintained the relevant coverages, the average percentage of claims made under those coverages, and the average amount of those claims.

Sagamore issued 33,369 insurance policies in Arkansas during the class period. Of those policies, 31,659 did not include any of the "personal injury coverages" (medical benefits, accidental death, and disability benefits), and 23,479 did not include any of the uninsured or underinsured motorist coverages. The claims rate for policies that include the medical benefits coverage was 1.75% with an average claim of $2,992.97. The claims rate for policies including uninsured motorist bodily injury coverage was .4% with an average claim of $5,236.19. The claims rate for policies that include uninsured motorist property damage coverage is .78% with the average claim at $1,490.64. The claims rate for policies that include underinsured motorist bodily injury coverage is .07% and the average claim was $8,115.38. Sagamore noted that it has never paid accidental death benefits under one of these policies and that it does not track income disability claims under this coverage independently. Using these claims rates and average pay-outs, for the 31,659 members of the proposed class without the "personal injury coverages," it is estimated that there would be 554 medical benefit claims with a total pay-out of approximately $1,658,105. Using these claims rates and average pay-outs, for the 23,479 members of the proposed class without any of the uninsured or underinsured motorist coverages, it is estimated that there would be 94 claims for uninsured motorist bodily injury coverage, 183 claims for uninsured motorist property damage coverage, and 16 claims for underinsured motorist bodily injury coverage with a total pay-out of $894,835 for

uninsured or underinsured coverages. Because Sagamore has not paid accidental death benefits and does not track income disability claims, neither party can estimate the number of claims or the amount Sagamore is likely to pay. Based on the past claims-rate experience and the average pay-out per claim, the estimate of the total amount of the claims comes to $2,552,940. After adding the 12% penalty and an estimated attorneys' fees award, the estimated pay-out under the plaintiff's formula is $3,802,857.

Sagamore asserts two alternative methods of calculating the amount in controversy. First, Sagamore renews its argument that the value of the claim should be measured by the face value of the coverages, which the Court dismissed in its previous opinion. Sagamore states that the face value of the relevant coverages would be $117,280; thus, if the class had 100 members, their claims would exceed $11 million. When an action seeks declaratory or injunctive relief, the amount in controversy is measured by the value of the object of the litigation. *James Neff Kramper*, 393 F.3d at 833 (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977)). The value of the object of the litigation is determined by the value to the plaintiff of the right sought to be enforced. *Burns v. Mass. Mut. Life Ins. Co.*, 820 F.2d 246, 248 (8th Cir. 1987). In insurance cases, the amount in controversy in a declaratory judgment action may be calculated two ways. If the insurer or insured is bringing the action to question the validity of the entire contract between the parties, the amount in controversy is the face value of the policy. 14B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3710 (3d ed. 1998); *see also Mass. Cas. Ins. Co. v. Harmon*, 88 F.3d 415, 416 (6th Cir. 1996). However, if the action involves the applicability of the policy to a particular occurrence, the amount in controversy is measured by the value of the underlying claim and not the face amount

of the policy. 14B WRIGHT & MILLER, *supra*, § 3710; *see also Hartford Ins. Group v. Lou-Con Inc.*, 293 F.3d 908, 911 (5th Cir. 2002).

Sagamore also argues that it would be appropriate to value the claims of the proposed class based on what the members of the class would have had to pay to purchase those coverages if those coverages had been offered and the members of the class had elected to purchase them. The incremental cost of a premium on a policy with at least one of the "personal injury" coverages is $210. The incremental cost of a premium for a policy with at least one of the uninsured motorist or underinsured motorist coverages is $148. Based on a $210 premium for each of the 31,659 policies without the personal injury coverages, the total value of the coverage for the class would be $6,648,390. Based on a $148 premium for each of the 23,479 policies without uninsured or underinsured motorist coverages, the total value of the coverage for the class would be $3,474,892. Thus, using the value of the coverages at issue as measured by the cost to purchase those coverages, the amount in controversy for the class members' claims would be $10,123,282.

Traditionally, the Eighth Circuit has held that a district court must rely solely on the plaintiff's viewpoint in determining the amount in controversy. *Smith v. Am. States Preferred Ins. Co.*, 249 F.3d 812, 813-14 (8th Cir. 2001) (citing *Trimble v. Asarco, Inc.*, 232 F.3d 946, 960-62 (8th Cir. 2000); *Mass. State Pharm. Ass'n v. Fed. Prescription Serv., Inc.*, 431 F.2d 130, 132 & n.1 (8th Cir. 1970)). Courts refused to consider the cost of injunctive relief to the defendant because that would effectively aggregate the plaintiffs' claims to satisfy the amount in controversy, which plaintiffs were not allowed to do. *See id.*; *Trimble*, 232 F.3d at 960-62; *see also* Stephen J. Shapiro, *Applying the Jurisdictional Provisions of the Class Action Fairness Act of 2005: In Search of a Sensible Judicial Approach*, 59 BAYLOR L. REV. 77, 116 (2007). However, after those cases were

decided, Congress adopted the Class Action Fairness Act, which requires that the claims of Class action plaintiffs be aggregated in determining whether jurisdictional minimum of $5,000,000 is met. *See* 28 U.S.C. § 1332(d)(6). The adoption of this provision requiring aggregation of the plaintiffs' claims is inconsistent with the old rule that required that the amount in controversy be viewed solely from the plaintiff's viewpoint. In determining the amount in controversy under the Class Action Fairness Act, "the value of injunctive relief should probably be considered from either the plaintiffs' or the defendant's point of view." Shapiro, *supra*, at 114. "Since CAFA expressly contemplates aggregation, and CAFA's evident purpose is to expand federal jurisdiction, the proper approach to valuing claims for injunctive relief under CAFA seems to be to use the total benefit to the plaintiff class or the aggregate cost to the defendant." Sarah S. Vance, *A Primer on the Class Action Fairness Act of 2005*, 80 TUL. L. REV. 1617, 1628-29 (2006).

The amount in controversy, when measured by the value of the object of the litigation from the vantage point of the defendant, exceeds $5,000,000, because the value of the insurance coverage – measured by the amount that Sagamore charged for the coverages at issue – exceeds $10,000,000. Because that is so, the Court need not reach the issue of whether the face amount of the coverages is the appropriate measure of the amount in controversy. If Toller could show "to a legal certainty" that the pay-out for the claims of the class would be less than $5,000,000, she might still prevail on her motion to remand. *In re Minn. Mut.*, 346 F.3d at 834 (quoting *Trimble*, 232 F.3d at 959). However, the pay-out calculations that she uses to show the amount in controversy are based on estimates and averages. Toller is unable to show that the claims of the class are less than the required amount in controversy "to a legal certainty." Toller's motion to remand is denied.

## CONCLUSION

Sagamore did not meet its burden of proving that the amount in controversy exceeds $75,000 for Toller's individual claim as required by 28 U.S.C. § 1332(a). However, the undisputed facts show that the value of the insurance at issue, measured by the amount that Sagamore would charge for the coverages at issue, exceeds $10,000,000. Consequently, the amount in controversy for claims of the class exceed $5,000,000, the minimum amount for jurisdiction pursuant to 28 U.S.C. § 1332(d). Therefore, this Court has subject matter jurisdiction and Toller's motion to remand is denied. Document #13.

IT IS SO ORDERED this 4th day of April, 2008.

*J. Leon Holmes*
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE